Filed 5/6/14  In re Victoria M. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re VICTORIA M., a Person Coming Under the Juvenile Court Law. | B250553 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK97027) |
| Plaintiff and Respondent, | |
| v. | |
| ANA M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Robert Draper, Judge.  Affirmed in part and reversed and remanded.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Ana M. ("Mother"), the mother of minor S.V., appeals from orders of the juvenile court which declared her children, Angel M., Blanca M., Victoria M. and A.P. dependents of the court under Welfare and Institutions Code section 300, subdivision (b),[1] based on, among other allegations, Mother's substance abuse. Mother also appeals the dispositional order that removed Victoria M. and A.P. from her physical custody and placed them with their father[2] but permitted visitation for Mother. Mother argues that the juvenile court's jurisdictional findings and the disposition order were not supported by substantial evidence. For the reasons articulated below, we reject her arguments with respect to the jurisdictional findings concerning Mother's substance abuse and the physical abuse by Rosa and affirm the jurisdictional order. Nonetheless, as we shall the explain, we reverse the disposition order, and the order terminating jurisdiction and remand for dispositional proceedings for Victoria M. and A.P. The dependency court failed to make the required findings under section 361 (i.e., clear and convincing evidence that the return of the child to the care and custody of the Mother would pose a substantial risk of detriment) to warrant the removal of the minors from her custody.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Prior Dependency Proceedings

Mother and her children, nine-year-old Angel M., seven-year-old Blanca M., five-year-old Victoria M., and three-year-old A.P. originally came to the attention of the Department of Children and Family Services ("DCFS") in early 2006. Over the last eight years the DCFS has received multiple referrals about the family. The DCFS received a report that Angel M.'s father had emotionally abused him and physically abused Mother in 2006. Thereafter in August 2008, the DCFS received a referral that alleged Mother

---

[1]     All further code references, unless indicated otherwise, are to the Welfare and Institutions Code.

[2]     Victoria M. and A.P.'s father Israel P. is a non-offending parent and is not a party to this appeal.

failed to supervise the children appropriately, that she abused alcohol, the family home was dirty, the children were unclean and malnourished and did not have sufficient food, and that numerous people came in and out of the home. After an investigation, referral was closed as unfounded.

In September 2011 the family began receiving Voluntary Family Maintenance ("VFM") services after the DCFS received another referral about Mother. The referral alleged the family home was unsanitary and covered in dog urine and dog feces; Mother had failed to administer medication prescribed for A.P.'s eye infection, the children were not bathed regularly, begged for food, and that Mother had instructed the children to not tell anyone what occurred in the home. In addition, Victoria M.'s stepfather witnessed mother submerging Victoria under water in the bathtub and Mother exhibiting mood swings. The children also disclosed and Mother admitted she had hit the children with a belt. The referral was substantiated and resulted in a VFM that included parenting, counseling, and Family Preservation services.

Thereafter, in late September 2012, another referral alleged Mother would hit the children, tell them she wished they were dead, and tell them they would be moved to another home if they told anyone what occurred in the home. The referral was closed as unfounded.

The VFM was closed on December 3, 2012. Nonetheless, on December 7 and 9, 2012, two additional referrals were received by the DCFS about Mother. They alleged that while three months pregnant with Victoria, Mother abused alcohol and that she had continued to drink too much alcohol; that Mother had passed out, and had also threatened suicide. There were allegations that the home did not have sufficient food for the children, and that Mother spent her food stamps and welfare money on hard liquor for her friends. It was further alleged that numerous people came in and out of the home at all hours of the day and night, and that Mother would stay up late at night and sleep all day leaving the children unsupervised. These referrals were under investigation at the time the current incidents that gave rise to these proceedings occurred.

3

## B.     Current Dependency Proceedings

On December 15, 2012, the DCFS received a referral alleging that Blanca M. had been physically abused by Mother's roommate, Rosa C. who had been babysitting the children while Mother was staying at her boyfriend's house for the weekend.  Blanca M. told the police officers investigating the claim that Rosa C. struck her back and face with an open hand for no reason.  The officers stated they contacted Mother who said she did not have transportation to get to the police station to pick up the children.  To the officer investigating the incident, Mother appeared nonchalant about Blanca M. being beaten and the children being in police custody.

Angel M. told the DCFS social worker that Rosa C. would watch him and his siblings when Mother went away for the weekend "to party."  For punishment, Rosa would ground him or hit him and Blanca anywhere with an open hand.  Asked if he had told Mother that Rosa hit him and Blanca when babysitting them, Angel said "yes, but [Mother] didn't care."

The maternal grandmother was also interviewed.  She said that she was unaware Rosa C. had abused the children until Blanca reported it.  The maternal grandmother said Mother would occasionally drop the children off at her home on the weekends to go party.  The maternal grandmother opined that Mother's parenting had improved since the VFM, but there still was work to be done and that Mother "partied" too often.

When the social worker met with Mother, Mother stated that she had drug tested for DCFS on December 14, 2012, and then got lost and could not find her way home. She, therefore, went to stay with her boyfriend, whose house she was able to find. Mother denied any knowledge of Rosa C. abusing the children.  She denied that she ever "partied" and said she did not like consuming alcohol and denied having any history of substance abuse.  Mother also reported that Angel and Blanca were diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and Angel had been prescribed medication she did not know the name of and had not refilled in two weeks because she had been too busy dealing with her roach infestation.  Mother said she was unemployed.

4

Mother also revealed that besides Rosa, another couple and their child resided in her home.

Victoria and A.P.'s father, Israel P., was also interviewed.[3] He stated that he had separated from Mother, and A.P. and Victoria M. stayed with him on weekends. According to Israel P., another babysitter had previously observed marks on Blanca M.'s body. Israel P. reported that Mother abused alcohol and marijuana and that she abused substances when she was pregnant with Victoria. He stated that Mother would neglect and verbally abuse the children.

The DCFS filed a juvenile dependency petition pursuant to section 300, subdivisions (a), (b), and (j) alleging that Blanca M. and Angel M. were physically abused by Rosa C., and Mother knew of the physical abuse but failed to protect the children and that Mother failed to keep Angel's medical appointment and refill his psychotropic medication for a two-week period.[4]

Mother agreed to reside with the children at maternal grandmother's home until Rosa C. moved out of her home. However, Mother's most recent drug test result on December 14 was positive for amphetamine and methamphetamine. DCFS recommended the children be removed from Mother's custody. At the detention hearing,

---

[3]   Although the court found Israel P. to be Victoria M.'s presumed father in December 2012, in January 2013, the DCFS reported it had located an "alleged" father of Victoria M., Ronald P. However, a paternity test concluded that he was not Victoria's biological father. Ronald P. reported that he had lived across the street from Mother and was a friend of Israel P. Ronald P. said that he had been intimate with Mother on one occasion and was aware she had multiple sexual partners. Ronald P. also reported Mother abused methamphetamine, marijuana, and alcohol when she was caring for Angel M. and Blanca M.

[4]   The section 300 petition was subsequently amended to add an allegation under subdivision (b) that Mother used amphetamines/methamphetamines which rendered her incapable of providing regular care for the children; that she abused drugs in the home while the children were present and under her supervision and that her use of drugs endangers the children and places them at risk of physical or emotional harm or damage.

the juvenile court detained the children from Mother and placed A.P. and Victoria M. with Israel P. DCFS placed Blanca M. and Angel M. in separate foster homes.

In the jurisdiction and disposition report, Israel P. expressed concerns about the conditions in the family home. He said it was suspicious to him that there were so many adults in the home. He reported that there were empty containers of alcohol lying around, that he sometimes smelled marijuana in the home, and had found strangers sleeping in the children's bed. He further complained that the home was dirty and disorganized.

Angel M. said Rosa C. became angry because Blanca M. could not find her shoe. Rosa pulled Blanca's hair and threw Blanca into the corner. Angel said Rosa C. hit him, Blanca, and Victoria. Angel reported that Rosa would pull his hair and hit him when he did not listen. Angel recalled that Blanca had told Mother about Rosa hitting her and that he may have reported it as well. Blanca M. stated she had previously told Mother that Rosa C. would hit her, adding, "I was about to cry and [Mother] said, you're lying and I said mommy, I'm not lying. I said it a lot of times but she said a police was going to come.

The maternal grandmother reported when she told Mother about the abuse, Mother defended Rosa C. and said she did not believe Rosa C. had hit Blanca M. The maternal grandmother also stated that Mother allowed random people to enter her home.

According to the disposition and jurisdictional report, when questioned about her abuse of substances, Mother replied by stating, "What about it?" Mother admitted she began using methamphetamine two weeks prior to the physical abuse incident and used once every two days. She claimed the last time she used was December 25, 2013. When asked if she was going to stop using drugs, Mother said "no," but then said it had been a week since she used because she was going to stop. Mother admitted using methamphetamine in the restroom while the children were in their bedroom watching television. When asked who cared for the children when she was using methamphetamine, Mother said she did, but explained she did not use a lot of the drug and it would keep her awake, alert, and energetic. With respect to her alcohol abuse,

6

Mother said she drank one or two sips every night to help her relax, but denied she had an alcohol problem or that she drank in front of the children. Angel M. told the social worker that he sometimes saw Mother drink three cups of beer that was yellow.

Mother stated she wanted to regain custody of the children and was willing to accept services from DCFS. She had enrolled in a parenting class and attended two sessions.

In May 2013, DCFS reported Mother had completed a 12-week parenting course, and 21 outpatient counseling sessions at the Asian Pacific Counseling and Treatment Center. In March 2013, Mother enrolled in the Integrated Treatment Program for Co-Occurring Disorders at Homeless Health Care Los Angeles. The 52-week program required Mother to attend two substance abuse treatment groups a week and engage in at least one individual counseling session a week. Mother failed to drug test on January 18 and 28, 2013, and tested negative seven times.

DCFS recommended the juvenile court sustain the dependency petition, that Mother receive reunification services with Angel M. and Blanca M., and that Victoria and A.P. remain with Israel and jurisdiction be terminated with a family law order granting Israel sole physical custody, the parents joint legal custody, and Mother monitored visits.

At the jurisdictional hearing the court received testimony from Mother and the various reports from the DCFS into evidence. Mother denied that she was aware that Rosa C. had abused the children until it was reported to authorities. Mother stated that when she learned of the abuse, she told Rosa to leave her apartment and Mother had not had any contact with Rosa since then.

Mother testified that she had completed parenting classes, individual counseling parenting classes, gone to twice weekly substance abuse group sessions, and attended anger management classes. Mother explained that she missed the drug test on January 28, 2013, because she was at court and the drug test on January 18, 2013, because her telephone was not working. Mother acknowledged that it was "mostly" her fault that the

7

children were removed from her custody. Mother admitted missing the children's appointments and not refilling their medication.

Mother claimed that the first time she used methamphetamine was December 2012 and that she only used the drug five times and had not used since late December 2012. Mother conceded the drug changed her mood and she would not pay much attention to the children when she was using it. She said she decided to stop using methamphetamine because of her children. At the time of her testimony, Mother was unemployed and did not have her own residence, but had confirmed with the maternal grandmother that she and the children could reside with the maternal grandmother if the children were returned to her custody.

The children's attorney asked the court to sustain only the counts in the petition alleged under section 300, subdivision (b), and place the children with Mother on the condition they reside with the maternal grandmother, and with unannounced visits by the DCFS. Respondent asked the court to sustain the petition, and place Victoria M. and A.P. with Israel P. and terminate juvenile court jurisdiction as to those children. With respect to Blanca and Angel, respondent agreed they could be placed with maternal grandmother and there would be no risk if Mother resided in the home. Mother's counsel argued that the court should dismiss the petition based on insufficient evidence.

The juvenile court then stated, "My tentative is to release the two younger children to [Israel] with a family law order after I sustain jurisdiction." The juvenile court then dismissed counts a-1, a-2, j-1, j-2, and j-3, and sustained counts b-1 through b-4, declaring the children dependents of the court based on the findings that Rosa C. had abused Blanca M. and Angel M., and that Mother knew of the abuse and failed to protect them; that Mother had failed to refill Angel M.'s psychotropic medication for two weeks and failed to keep the child's medical appointment; and that Mother used amphetamines/methamphetamines which rendered her incapable of providing regular care for the children; that she abused drugs in the home while the children were present and under her supervision and that her use of drugs endangered the children and places them at risk of physical or emotional harm or damage.

8

The court then proceeded to the disposition. Mother's counsel asked that Mother retain physical and legal custody of the children. She requested that Blanca M. and Angel M. remain placed with her so long as they all resided in the maternal grandmother's home. The court agreed, and ordered Blanca M. and Angel M. placed in home of mother on the condition that Mother resides in the maternal grandmother's home.[5]

With respect to the younger two children, Mother asked the court to order that she maintain joint physical and joint legal custody of Victoria M. and A.P., with Israel P., but Mother also agreed the children could remain placed with Israel P. Mother's attorney argued that because the court made a "home-of-mother" order for Blanca M. and Angel M., it could not make a finding by clear and convincing evidence Victoria M. and A.P. would be at risk if returned to Mother's custody. The court denied the request as to Victoria M. and A.P. The court did not make any finding of clear and convincing evidence of risk to Victoria M. and A.P. to warrant removal of the children from Mother's custody. Nonetheless, as to Victoria M. and A.P., the court entered an order: "terminating jurisdiction as to Victoria and [A.P.] and staying the order terminating jurisdiction subject to the family law order giving [Israel P.] sole physical custody and joint legal custody with Mother." The court also ordered Mother to complete a substance abuse program with random drug testing, a parenting program, and individual counseling, and to participate in family preservation services.

On June 5, 2013, the juvenile court issued a Custody Order - Juvenile - Final Judgment ("Family Law Order") that gave Mother and Israel joint legal custody, Israel sole physical custody, and mother unmonitored weekend and overnight visits as can be arranged by the parties. On June 6, the court terminated its jurisdiction.

Mother filed this timely appeal.

---

[5] On March 20, 2014, the dependency court terminated its jurisdiction as to Blanca M. and Angel M.

9

## DISCUSSION

Mother appeals both from the juvenile court's jurisdictional findings under section 300 as to all of the children and its dispositional order which removed Victoria M. and A.P. from Mother's custody. We review both for "any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact." (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547; *In re David M.* (2005) 134 Cal.App.4th 822, 828 [jurisdictional findings]; *Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 762 [dispositional orders].) "Under the substantial evidence rule, we have no power to pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or determine where the weight of the evidence lies." (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1135, disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748-749, fn. 6.) "Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its decisions for those of the trier of fact." (*In re Katrina C.*, *supra*, 201 Cal.App.3d at p. 547.) Applying this deferential standard, we review the evidentiary record in the light most favorable to the order. (*In re Diamond H.*, *supra*, 82 Cal.App.4th at p. 1135.)

### A. *Jurisdictional Finding*

At issue here is the juvenile court's assumption of jurisdiction under section 300, subdivision (b).[6] To warrant jurisdiction under that subdivision, there must be evidence of "three elements: (1) neglectful conduct by the parent in one of the specified forms; (2)

---

[6] That provision reads in pertinent part as follows: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . ." (§ 300, subd. (b).)

10

causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk of such harm or illness.'" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

Section 300 explicitly contemplates a parent's failure to protect from physical abuse and neglectful care as a result of a parent's substance abuse as specified forms of conduct that may give rise to a jurisdictional finding under that section. (§ 300, subd. (b).) Here the court sustained allegations under section 300, subdivision (b), that Blanca M. and Angel M. were physically abused by Rosa C., and Mother knew of the physical abuse but failed to protect the children (counts b-1 and b-2). In addition, the court found that Mother used drugs that rendered her incapable of providing regular care for the children and that she abused drugs in the home while the children were present under her supervision (count b-4).

With respect to the allegations of the failure to protect the children from physical abuse in counts b-1 and b-2, we conclude there was sufficient evidence that the abuse occurred and that one or both of the children reported it to Mother and that she did not protect them. It appears that Mother had left the children in Rosa C.'s care on more than one occasion and that based on the statements of the children concerning their efforts to report to Mother about Rosa C.'s treatment of them, it appears that Rosa C. abused Blanca M. and Angel M. more than once. According to the children, Mother did not believe them when they complained to her and even accused Blanca M. of lying about it. The maternal grandmother also stated that Mother did not initially believe the report of abuse even after the children were in custody and in fact sought to defend Rosa C.

Nonetheless, Rosa C. moved out of the family home and appears to have had no further contact with Mother or her children after the incident was reported to authorities. In addition, by the time of the jurisdictional hearing, Mother had completed a parenting course, and had taken responsibility for her actions with respect to Rosa C.'s supervision. In June 2013, Mother and the children were residing with maternal grandmother and the condition and well-being of the children had improved. These improved conditions, however, must be viewed in the context of Mother's history and the prior interventions with this family by the DCFS. Mother's progress on this issue was completed pursuant to

11

the supervision of DCFS and court orders, and is relatively recent and short-lived when considered in the full context of the history of this family.

Although "the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm" (*In re Rocco M., supra,* 1 Cal.App.4th at p. 824), a showing of prior physical abuse is sufficient to support the initial exercise of jurisdiction under section 300, subdivision (b). (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1434-1439.) Indeed, the court may consider past events when determining whether a child presently needs the juvenile court's protection. (*In re Diamond H., supra,* 82 Cal.App.4th at p.1135; *In re Troy D.* (1989) 215 Cal.App.3d 889, 899-900.) A parent's past conduct is a good predictor of future behavior. (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169-1170.) "Facts supporting allegations that a child is one described by section 300 are cumulative." (*In re Hadley B.* (2007) 148 Cal.App.4th 1041, 1050.) Thus, the court "must consider all the circumstances affecting the child, wherever they occur." (*Id.* at pp. 1048, 1049.)

In light of all the circumstances, in our view, a jurisdictional finding under section 300, subdivision (b) based on the abuse allegations was necessary to protect the children from risk of harm.

With respect to the section 300, subdivision (b)(4) findings before this court, Mother does not deny that there was evidence of her abuse of methamphetamine during December 2012. Nonetheless, she asserts the evidence to sustain the findings is insufficient because she used methamphetamine only a handful of times, and that she had no other history of drug abuse. As a result she claims her use of drugs was limited and did not endanger the children or place them at risk of physical or emotional harm or damage. She points out that by the time of the jurisdictional hearing she was participating in a substance abuse program and thus, the children were no longer at risk.

In our view the record contains sufficient evidence to prove the allegations of Mother's abuse of drugs in the family home while the children were present and that she tested positive for methamphetamine in December 2012. In addition, there is evidence in the record that Mother had a history of substance abuse and that she has repeatedly

12

denied. The children, the maternal grandmother and others, including Victoria M. and A.P.'s father described Mother's "partying" and her history of abusing drugs and alcohol even during 15 months of VFM services. Mother's abuse of substances developed over a period of time; Israel P. reported that Mother used alcohol and marijuana while she was pregnant with Victoria M. It was Mother's desire to "party" that caused her to neglect her children and leave them in the care of others, including Rosa C., on a number of occasions. Although it appears that Mother had begun participating in a substance abuse program by the time of the jurisdictional and dispositional proceedings, Mother's two months of attendance in a year-long treatment program does not eliminate the need for continued dependency jurisdiction in light of her history of abusing substances. In light of the totality of the circumstances, the dependency court's finding that the children were at substantial risk of harm based on Mother's abuse of drugs has sufficient evidentiary support in the record. In view of the foregoing, we conclude that the court properly exercised jurisdiction under section 300 and properly sustained the allegations under section 300 of the dependency petition.[7]

---

[7]    As respondent correctly concedes, there was insufficient evidence to support a finding of harm or risk to the children as a result of Mother's failure to refill Angel M.'s medication or missing a couple of doctor's appointments as alleged in the petition in the section 300, subdivision b-3 allegation. Respondent did not present any evidence in the dependency court that these circumstances caused actual harm or placed the children at risk of harm. As a result the allegations in the petition under section 300, subdivision b-3 must be stricken from the sustained petition.

This notwithstanding, because as described elsewhere here, substantial evidence supports the other subdivision b allegations, the court properly exercised dependency jurisdiction under subdivision (b) of section 300. When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

## B. *Dispositional Order*

Before this court Mother challenges the juvenile dependency court's dispositional order as to Victoria M. and A.P., which removed the children from her physical custody and placed them with Israel P. as well as the order terminating jurisdiction. She argues, among other things, that the order was not supported by sufficient evidence given the progress that she had made since the detention hearing. She also argued that the removal order was inconsistent with the court's order with respect to Blanca M. and Angel M. that allowed those children to remain with her in the home of the maternal grandmother.[8] Respondent argues that Mother should not be heard to complain about the dispositional order as to Victoria M. and A.P. because she "invited" the error when she agreed that the children could remain placed with Israel P.

After the juvenile court finds a child to be within its jurisdiction, the court must conduct a dispositional hearing. At the dispositional hearing, the court must decide where the child will live while under the court's supervision. Before the juvenile court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. . . ." (§ 361, subd. (c)(1)[9]; see *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) At the dispositional phase of dependency proceedings the burden of proof is clear and convincing evidence. (See § 361; *In re Sheila S.* (2000) 84

---

[8]    Mother does not challenge the order with respect to Blanca M. and Angel M.

[9]    The guidelines and limitations for removal of a child from the custody of the parents are set forth in section 361. Section 361 provides, in pertinent part: "(c) A dependent child may not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5) . . . ." (§ 361, subd. (c)(1).)

14

Cal.App.4th 872, 881.) "Whether the conditions in the home present a risk of harm to the child is a factual issue." (*In re N.M.* (2011) 197 Cal.App.4th 159, 170.) The court's dispositional finding is also subject to a sufficiency of the evidence standard of review. (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1078.)

At the time the children were detained from Mother, she had sole physical custody of all four of the children. Victoria M. and A.P. spent some weekends with Israel P., but this appears to have been an informal arrangement between Mother and Israel P. The court's disposition order removed Victoria M. and A.P. from the physical custody of Mother and ordered Israel P. to have sole physical custody of the children, with visitation for Mother.

A review of the record reveals, however, that the dependency court failed to make required findings under section 361, subdivision (c) to support the removal order. The court did not find by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. . . ." (§ 361, subd. (c)(1).) Absent these findings under section 361, subdivision (c), the court had no legal basis to order Victoria M. and A.P. removed from Mother's physical custody. As a result the court's removal order and the court's subsequent order terminating dependency jurisdiction must be reversed and the matter remanded to the juvenile dependency court for further proceedings.

### *DISPOSITION*

The disposition order for Victoria M. and A.P. and the order terminating dependency court jurisdiction are reversed as to those children and the matter is remanded to the dependency court for a new disposition hearing. At the disposition hearing the dependency court is directed to assess and consider evidence of the current conditions and living circumstances of the children and Mother. The court also is directed to decide where the children will live while under the court's supervision and

15

predicate an order, if any, removing the children from Mother's physical custody on the findings under section 361, subdivision (c).

On remand, the court is also directed to modify the jurisdictional order by striking the allegations contained in count b-3 of the petition. The jurisdiction order is affirmed in all other respects.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**

**ZELON, J.**

16